# ATTACHMENT A:
# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT FOR
# 1037 REEPSVILLE ROAD, LINCOLNTON, NORTH CAROLINA

1. I, Miller Clint Bridges, Task Force Officer (TFO), U.S. Drug Enforcement Administration (DEA), presently assigned to Charlotte, North Carolina, being duly sworn, state:

2. I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 8, 18, 19, 21, 31 United States Code and other related offenses.

3. I am a Detective with Gastonia Police Department and am currently assigned as a Task Force Officer with the Drug Enforcement Administration (DEA) and have been so assigned since December 2013. I have worked as a law enforcement officer since 2002 and have been employed with the Gastonia Police Department for since 2007. During my tenure at the Gastonia Police Department, I have been assigned to the special investigations division, street crime unit, as well as the patrol division. Prior to being employed with the Gastonia Police Department, I was employed with the Shelby Police Department for over seven (7) years. During my tenure at the Shelby Police Department, I worked assignments in the narcotics/vice division, street crime unit, as well as the patrol division.

4. I attended a 500-hour basic law enforcement training program at Gaston College in 2002. I have also attended various training courses where the subject matter was the interdiction of narcotics and the detection of narcotic smuggling techniques.

5. Since December 2002, I have been involved in several investigations of individuals who derive substantial income from unlawful activities, including the importation, manufacture, cultivation, distribution, and sale of illegal controlled substances. In addition, I have experience

in the execution of search warrants and the debriefing of defendants, cooperating witnesses, informants, and other persons who have personal knowledge of the amassing, spending, converting, transporting, distributing, laundering, and concealing proceeds of unlawful activities. I am familiar with the habits and practices of persons engaged in violations of controlled substance laws, and I have more than 12 years of experience in narcotics investigations. I have actively participated in federal and state wiretap investigations, undercover drug purchases, searches and seizures, surveillances, intelligence analyses, drug reversals, conspiracy investigations, arrests, interviews and interrogations, drug interdictions, eradications, and clandestine laboratories. I have searched numerous residences and businesses for items related directly and indirectly to drug distribution. I have been tendered as an expert witness in the field of drug trafficking in federal court, in the Western District of North Carolina.

6. As a result of my personal participation in the investigation of matters referred to in this Affidavit, and based upon reports made to me by other law enforcement officials, I am familiar with the facts and circumstances of this investigation. The information contained in this Affidavit is provided for the limited purpose of establishing probable cause in support of search warrants for the above-listed property and two vehicles, within the Western District of North Carolina; therefore, I have not included each and every fact known to me concerning this investigation.

7. Based on my training and experience, and participation in controlled substance investigations, and financial investigations, which result from violations of narcotics laws, I know:

    a. That large scale narcotics trafficker must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing drug business.

    b. That drug traffickers very often place assets in names other than their own to avoid detection of these assets by law enforcement.

c. That even though these assets are in other persons' names, the drug traffickers' continue to use these assets and exercise control over them.

d. That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, ordering, sale purchase, and distribution of controlled substances.

e. That these aforementioned books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are readily available to the drug traffickers such as in their residences, places of business, and alternate storage locations (such as mini-storage facilities).

f. That it is common for large scale drug traffickers to secrete contraband, including but not limited to packaging material and other paraphernalia, in secure locations for ready access, and to conceal them from law enforcement, including in their vehicles, so they can be easily and quickly moved.

g. That persons involved in drug trafficking conceal in secure locations, with ease of access, large amounts of currency and other proceeds of drug transactions, and financial instruments and other evidence of financial transactions relating to the obtaining, transfer, secreting, and spending of drug transaction proceeds.

h. That when drug traffickers amass large amounts of money from the trafficking in illegal drugs that they attempt to hide their illegal origin. In order to accomplish this, they utilize foreign and domestic banks, cashier's checks, money drafts, real estate, and business fronts.

i. That documents relating to such attempts to hide the illegal origin of such proceeds are kept where the traffickers have ready access to them, often in their residences, places of business, and alternative storage locations, and often in close proximity to illegal drugs.

j. That it is common for drug traffickers to travel to major distribution centers and cities such as the Charlotte, North Carolina and Atlanta, Georgia areas and surrounding areas to receive and distribute drugs. That these methods of transportation include commercial airlines, commercial vessels, private aircraft, rental automobiles, private automobiles, and other such means of transportation.

k. That it is common for the drug traffickers to keep and maintain records of their travels in locations for easy access such as their residences, places of business and mini-storage facilities.

l. That drug traffickers commonly maintain addresses or telephone numbers, in books, papers, cell phones or tablets, which reflect names, addresses, and/or telephone numbers for associations in the drug trafficking organization, and

  keep these records in their residences, places of business and mini-storage facilities.

 m. That firearms are considered "tools of the drug trafficking trade." That is, traffickers often possess firearms to protect themselves, their drugs, and their proceeds from law enforcement, competitor drug traffickers, and would-be thieves.

 n. That the drug traffickers take or cause to be taken photographs of them, their associates, their property and their drugs, and that they usually keep these photographs in their residences, places of business, and alternative storage locations with other drug-related documents.

## **FACTS IN SUPPORT OF PROBABLE CAUSE**

8. Target Justin David BARNHILL lives at 1037 Reepsville Road, Lincolnton, North Carolina (the "Place to be Searched").

9. BARNHILL has prior convictions for, among other things, Larceny of Motor Vehicle in 2015, for which probation was revoked; and Possessing Stolen Goods and B&E Vehicles (three counts), for which probation was revoked.

10. On February 17, 2020, law enforcement conducted a stop of a vehicle in Lincoln County, North Carolina. They searched the vehicle and found 28 grams of methamphetamine. The driver had been observed coming from 2157 Stanley Drive, Lincolnton. Later on February 17th, law enforcement officials executed a search warrant at 2157 Stanley Drive, Lincolnton, and seized approximately 1,670 grams of methamphetamine and $7,661 in U.S. currency (which is the equivalent of more than one kilogram of methamphetamine).

11. On March 10, 2020, law enforcement in Lincoln County utilized a confidential informant ("CI") to conduct a controlled purchase a pound (approximately 455 grams) of methamphetamine. The CI met with the seller at 2157 Stanley Drive, Lincolnton, and the seller directed the CI to go to 1037 Reepsville Road (the "Place to be Searched"), where the transaction took place.

12. Based on the foregoing, and my training and experience, I submit that there is probable cause to believe that BARNHILL keeps drug trafficking records and/or paraphernalia or other non-drug evidence relevant to his drug trafficking at the Place to be Searched.

## **CONCLUSION**

Based upon training, experience, and the facts of this investigation, I submit there is probable cause to believe that Target Justin David BARNHILL conspired to distribute and to possess with intent to distribute controlled substances and there is probable cause to believe that the non-drug items listed in Attachment B to the search warrant Application will be found inside of the "Place to be Searched," 1037 Reepsville Road, Lincolnton, North Carolina; therefore, I request that the Court issue search warrant for the same.

/s/ M. Clint Bridges                         .
OFFICER M. CLINT BRIDGES
AFFIANT, TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

*AUSA Steven R. Kaufman has reviewed this Affidavit.*

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means on this 29th day of April, 2020, at 11:59 am.

Signed: April 29, 2020

David S. Cayer
United States Magistrate Judge

**ATTACHMENT B**
**Place to be Searched**

The Place to be Searched located at 1037 Reepsville Road, Lincolnton, North Carolina, is a white-in-color single family residence. The following is a photograph of the Property to be Searched:



# ATTACHMENT C
## Items to be Seized

This Affidavit is made in support of this Application to seize the following items:

1. Books, papers, records, receipts, personal telephone/address directories, telephone billing records, notes, ledgers, documents, airline tickets, travel documents, and documentation of occupancy or ownership of premises.

2. Bank records, money orders, wire transfer records or receipts, financial instruments, financial transaction records, cashier's checks, traveler's checks, money drafts and related financial records, money wrappers, currency counting machines/devices.

3. United States or foreign currency, negotiable instruments, stocks, bonds, jewelry, precious metals, any lock type box and safes as to conceal or hide from view.

4. Property deeds, vehicle registrations or titles, and/or other items evidencing the obtainment, concealment, and/or transfer or expenditure of funds or currency.

5. Cameras, photographs, videotapes or other images, in particular images of assets, controlled substances, and/or co-conspirators.

6. Identification cards.

7. Cellular telephones, tablets, computers or other electronic devices used for record keeping of drug ledgers.

8. Packaging material, scales, presses, and other drug trafficking paraphernalia.

9. Weapons, including but not limited to firearms and ammunition